**IN THE IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LEON WEINGRAD, | : |
| *Plaintiff*, | : Case No. 2:24-cv-05488-KNS |
| v. | : |
| FIRST AMERICAN HOME WARRANTY CORPORATION, | : |
| *Defendant.* | : |

**PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

## I. INTRODUCTION

Attempts by the robocalling industry to blame the victims of their calls for failing to allege "sufficient" facts to state a claim for direct liability are nothing new. Trial and appellate courts have had little trouble rejecting such tactics.

But now, it has come to this.

Defendant First American Home Warranty makes a bold assertion without the corresponding factual predicate: that the Plaintiff cannot establish direct liability as to it, *despite speaking* to various First American representatives on the illegal calls, and despite receiving additional calls which not only came from representatives who stated that they were with First American but also bore First American's telephone number and when called back rings back to First American. For this reason, this Court, like nearly every other Court to consider similar form motions, should reject it.

Defendant's hodgepodge of other attempts aimed at dismissing the case under Rules 12(b)(6) and 12(b)(1) fare no better because multiple courts have rejected the Defendant's underdeveloped arguments in this regard.

Defendant's motion should therefore be denied in its entirety.

## II. FACTUAL BACKGROUND

The original complaint in this matter was filed in October, with Mr. Weingrad seeking to represent himself and a class of other individuals similarly situated, based on the Defendant's highly illegal calling campaign through which it called phones, like Mr. Weingrad and other class members whose numbers are on the National Do Not Call Registry, in blatant contravention of the plain text of the TCPA. The complaint is clear that, during the calls, the Plaintiff spoke with various First American representatives. The complaint is also clear that at least three of the four calls came from First American's caller ID, from First American

1

representatives, selling the same thing, and which, when called, ring back to First American. Despite these facts, the Defendant has sought to dismiss this case arguing that it did not do it, and in so doing minimized its own illegal conduct. This response follows.

### III.   LEGAL STANDARD

Under Rule 12(b)(6), a court may dismiss a complaint that fails to state a claim upon which relief can be granted. In order to state a claim upon which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rather than require detailed pleadings, the Rules demand only a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give defendant fair notice of what the claim is and the grounds upon which it rests." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (cleaned up). The requirement that a plaintiff "show" that he or she is entitled to relief means that a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).

In determining whether a claim is plausible, the court must "draw on its judicial experience and common sense." *Connelly*, 809 F.3d at 786–87. After identifying elements to set forth a claim and removing conclusory allegations, the Court must accept all well-pled factual allegations as true and determine if they give rise to relief. *Id.* A complaint may be dismissed only where it appears that there are not "enough facts to state a claim that is plausible on its face," not merely because the defendant proffers some contrary facts. *Twombly*, 550 U.S. at 570.

The standards for 12(b)(1) challenges for a lack of subject matter jurisdiction are also well-settled in this circuit. Notably, there exist two types of 12(b)(1) challenges, each with their corresponding standards: facial and factual challenges. *Mortensen v. First Fed. Sav. & Loan*

*Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). Here, Defendant has not submitted additional evidence in order to support its contention that the injunctive relief claims should be dismissed. In so doing, Defendant mounts a facial challenge. "In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard of reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss for failure to state a claim: Court[s] must accept as true all material allegations set forth in the complaint, and must construe those facts in favor of the nonmoving party." *Huertas v. Bayer US LLC*, 120 F.4th 1169, 1174 (3d Cir. 2024). Moreover, to the extent that the motion does not properly address jurisdiction but instead sounds in the factual merits of the Plaintiff's claims, such motion also ought to be denied and the case proceed. *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

### IV.  ARGUMENT

A.  *The Plaintiff has alleged direct liability in far greater detail than in other similar cases. Courts have already determined those allegations sufficient to infer direct liability.*

As described above, the Court's analysis must begin and end with whether or not the Plaintiff has plausibly alleged the Defendant's involvement in the calls with sufficient specificity to give rise to the inference of direct or vicarious liability. He has done so because he has pled facts which sufficiently prove at the pleadings stage that Defendant directly placed the first call, illegally, using a fake "spoofed" caller ID, which Defendant then used for its benefit in attempting to sell the Plaintiff a home warranty through agents who confirmed their identities. (Compl. ¶ 26). The Plaintiff plainly pleads that this call was sent from Defendant, who then "attempted to transfer the call to another First American Home Warranty representative to continue the sales pitch, but the line disconnected." (*Id.*)

Thereafter, the Plaintiff received, within the span of less than a week, at least three *additional* calls from Defendant First American's *direct number*, which is sufficient to give rise

3

to the inference that First American placed them, including because the various agents stated that they were "from First American" and continued to attempt to solicit the plaintiff for First American's home warranty services. (Compl. ¶ 27–29). As such, the Plaintiff has clearly alleged that First American is liable for the conduct at issue and has made allegations that support the fact that First American made those calls directly as part of an *en masse* campaign, including because First American continued to call the Plaintiff in an effort to sell him, this time from a real and direct caller ID, after the first call disconnected.

The Plaintiff is entitled to rely on the Defendant's *very own representations*, as pled in the Complaint, that during each of the calls, the Plaintiff spoke to representatives who confirmed that they were with First American. Defendant cannot be permitted to simply say at the Rule 12(b)(6) stage that "we didn't do it." In essence, the Defendant attempts this defense by disguising it as a challenge to the Plaintiff's allegations of direct liability at the pleadings stage. Rule 12(b)(6) is not an appropriate device for testing the truth of what is asserted in the complaint or for determining whether the plaintiff has any evidence to back up what is in the complaint. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 511 (2002). However, that's precisely what the Defendant attempts to do here, making a red-herring argument that the Plaintiff has failed to state a claim because he has allegedly failed to set forth facts giving rise to direct liability that the Defendant placed the calls at issue. But that's a "red herring" that begs the question "who did, then?" *See Consol. Grain & Barge, Inc. v. Anny*, No. CIV.A. 11-2204, 2013 WL 486687, at *6 (E.D. La. Feb. 6, 2013).

On this point, the cases that the Defendant points to are wholly inappropriate and easily distinguishable, and even support the Plaintiff. For example, in *Wick v. Twilio Inc.*, No. C16-00914RSL, 2017 WL 2964855, at *4 (W.D. Wash. July 12, 2017), the Court *allowed* a claim

4

against a call vendor to proceed when a third party initiated the call at issue. And in *Meeks v. Buffalo Wild Wings, Inc.*, No. 17-CV-07129-YGR, 2018 WL 1524067, at *4 (N.D. Cal. Mar. 28, 2018), the Court dismissed claims against another company, Yelp, when the Plaintiff's allegations indicated that "Buffalo Wild Wings restaurants, initiated the text messages" sent by hostesses to encourage the Plaintiff to download the Yelp app so that he could "[c]heck [his] place in line." *Id.* Not so here, where the Plaintiff pleads no even remotely parallel facts. This case is very much like *Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 275, 282–83 (S.D.N.Y. 2024), where one of the calls came from a number that, when called back, played "a prerecorded message" identifying the Defendant's alias. The Court flatly concluded that "BLC is wrong. The FAC alleges that 'BLC directly initiated' the call at issue and pleads 'factual content [that] allows the court to draw the reasonable inference that [BLC] is liable for the misconduct alleged.'" *Id.* (cleaned up). Helpfully, the court identified several facts and inferences which allowed it to draw that conclusion, including that the defendant owned and controlled the phone number, that the defendant was the beneficiary of the message conveyed via the robocall, and that Bottom Line Capital is a pseudonym of BLC to avoid ill will for the BLC brand. *Id*.

   Even so, Defendant's arguments for why the Court should not credit Plaintiff's allegation that Defendant *illegally spoofed its caller ID* during the first call, specifically to hide its responsibility for that call and avoid ill will for the First American brand, are tenuous at best. Defendant's response to this well-pled factual allegation, that the Defendant *deliberately* spoofed its caller ID *to conceal its identity*, turns this logic on its head, and takes advantage of the fact they did so to cast unjustified doubt on the Plaintiff's well pled allegations at the pleadings stage. Defendant lied about its caller ID and is now taking advantage of their own misconduct in that regard to attempt to toss this case at the pleadings stage.

5

Defendant further unjustifiably leaps to the conclusion that, because the Plaintiff was *transferred* to various individuals, who all confirmed that they were with First American, that some of those individuals were not "representatives or employees of First American." That simply does not track. Nothing about the fact that the call was transferred to various First American agents, directly during the same call, means that the call was placed by some unknown third-party entity and then magically transferred to First American for its benefit. Regardless, there is no "affirmative identification before transfer" requirement or even an identification requirement whatsoever in the TCPA. Were that the case, any bad actor (like Defendant here) could call people incessantly using fake and illegally spoofed caller IDs and only identify themselves when they thought they had a gullible customer on the line and were about to sell them something, thus disclaiming responsibility for the calls, despite having placed them, and despite other evidence that the calls originated from the same place.

Companies like First American transfer calls internally between employees all the time, such as from a "boiler room" sales floor to a more experienced "closer," which is what Plaintiff suspects happened here. In fact, no part of the Defendant's motion so much as acknowledges this possibility, which is rendered all the more plausible because it appears that First American's "closing" department, which used First American's real caller ID, made three additional illegal calls to the Plaintiff and looking to continue selling First American's products and services. The Defendant's standard provides a perverse incentive for a caller to conceal their identity by making it impossible for any plaintiff to prove a claim against the defendant at the pleadings stage based on a lack of information and evidence. Luckily for consumers who receive unwanted calls, this is not the standard. *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts,

6

but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation.").

In sum, based on the indicia of the calls, the Defendant's own representations on the calls, and the other evidence the Plaintiff gathered, the Plaintiff alleges that the Defendant *directly* placed the calls at issue. Of course, the exact reason for why the initial call was transferred through what appears to be multiple internal departments remains to be explored in discovery, but it stretches credulity to think that First American would have such ready access to the Plaintiff's information so as to be able to continue a sales pitch initiated by some uninvolved third-party as the Defendant claims. Defendant's contention otherwise stretches the boundaries of logic and common sense. Rather, it is a far more reasonable inference to believe that the call was placed by Defendant as an initial matter simply transferred from one employee to another internally using some sort of system designed for this very purpose and specialization.

Defendant further attempts to inject artificial doubt into the Plaintiff's pleading that the calls from 877-349-3654 were "from First American" and that that number is a "direct number that when called back leads to First American Home Warranty." The Defendant is full of baloney in this regard and makes an argument that borders on the sanctionable. Plaintiff invites the Court to call the number itself, and be greeted by an automated voice which says "Thank you for calling First American Home Warranty." The Court must look to the totality of the circumstances here and understand that Defendant attempted to put every conceivable hurdle to prevent itself from being identified as the source of the first illegal call. This behavior is no different than the common conduct of other individuals in all sorts of criminal enterprises which take steps to hide their involvement. This case is no different and the Defendant should not be rewarded in its obfuscation attempts. The Plaintiff understood these hurdles and investigated the

7

calls, which ultimately identified the Defendant, including through three calls from this number. The Plaintiff alleged that the Defendant *explicitly designed* their telephone marketing strategy in such a way so as to cast doubt on the Plaintiff's allegations when they get sued and to take advantage of their own misconduct. Putting every conceivable hurdle in the face of the Plaintiff investigating the source of the illegal contacts he received is par for the course for the Defendant. The Defendant cannot now cry foul given that the Plaintiff has caught its hand in the cookie jar.

Indeed, this *very court*, when faced with a nearly identical form motion filed by the same law firm for Defendant as here, had no trouble rejecting the very same arguments the Defendant advances. In *Smith v. Am.-Amicable Life Ins. Co. of Texas*, No. CV 22-333, 2022 WL 1003762, at *2 (E.D. Pa. Apr. 4, 2022), Judge Baylson held sufficient allegations that, during the calls, the plaintiff was told that he was "speaking with American-Amicable" and allegations that the calls "concerned insurance benefits–American-Amicable's area of business." *Id.* As the Court concluded, "The Court finds that, if true, Plaintiff's allegation that he was informed during both prerecorded calls that he was speaking with American-Amicable supports a plausible inference that Smith was indeed called by or on behalf of American-Amicable." *Id.* So too here, where Defendant admitted that they were calling from "First American Home Warranty," where some of the calls appear to have used First American's legitimate caller ID number, and where the calls were all made to solicit home warranties, which is First American's area of business. (Compl. ¶ 23, 26–29).

Other courts swell this body of caselaw with the same accord that the Plaintiff has sufficiently alleged direct liability at the pleadings stage and have rejected nearly identical tactics. For example, in *Stemke v. Marc Jones Constr., LLC*, No. 5:21-CV-274-30PRL, 2021 WL 4340424, at *2–3 (M.D. Fla. Sept. 23, 2021), a sister court stated in a case on all fours and

8

admittedly weaker facts than this one:

> Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls.
>
> For example, Sunpro argues that Plaintiff fails to "support" a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls. To the extent Sunpro disputes that it directly placed the calls, Sunpro may take discovery on this matter and argue the issue at the dispositive motion stage.

Taking all factual inferences in the Plaintiff's favor, as the Court must do now, the Plaintiff's allegations are sufficient. As Judge St. Eve, prior to being appointed by President Trump to the Seventh Circuit Court of Appeals, held in a TCPA case denying a similar motion to dismiss:

> Sempris does not dispute that Quality initiated four calls to Toney in December 2012, but contends that Toney "cannot plausibly allege that the three unanswered calls she purportedly received were initiated by Quality for the purpose of marketing Sempris's Budget Savers membership program, because Toney does not allege--and cannot allege--that she has any personal knowledge of what the content of those calls would have been." . . . Sempris submits that Quality "just as easily could have been calling Toney to market the goods or services of another company it contracts with, for the exclusive purpose of confirming Toney's Stompeez order, or for a different purpose altogether" and that "Toney's assertion that that Quality made the three unanswered calls for the purpose of marketing Budget Savers is nothing more than rank speculation."
>
> The court disagrees. Toney has alleged that she received and answered a call from Quality in which the caller tried to sell her a Budget Savers membership the day after she received three unanswered calls from Quality. The content and timing of the fourth call allows the court to draw a reasonable inference that Quality made the first three calls to market Sempris's services.

*Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014) (cleaned up). The same reasonable inferences can be made here.

To this end, this case is also nothing like the string cite identifying other cases where plaintiffs were held to insufficiently plead direct liability based on mere allegations, without

9

facts, that the defendants "made" or "initiated" the calls. *Contra Martin*, 723 F. Supp. 3d at 283 (distinguishing cases including *Bank*, cited by Defendant). In *Woodard v. Health Ins. All.*, for example, Court dismissed a direct liability claim against HIA when the plaintiff alleged "in the same breath" that "a third party," not HIA, called her and lacked any allegations as to the third-party's agency. No. 23 C 2630, 2024 WL 942629, at *2 (N.D. Ill. Mar. 5, 2024). Not so here, where the *only* company mentioned on the calls was First American. Similarly, in *Scruggs v. CHW Group, Inc.*, the Plaintiff provided "virtually no detail about the calls at issue," did not plead the "number(s) from which they originated," or anything about "the substance of the calls," especially when the Plaintiff alleged that the caller stated that they were merely "associated with" (i.e. not) the defendant. So too in *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, where the callers stated that they were calling "on behalf of "Farmers Insurance," i.e., not the defendant. No. 17-CV-03315-PJH, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018). Not so here, where Plaintiff has pled that the callers were "First American Home Warranty representative[s]" and "stated that they were from First American Home Warranty." (Compl. ¶ 26, 28).

To this end, the Defendant also misrepresents the court's holding in *Anderson v. Farmers Ins. Exch.*, where the court actually *credited* the plaintiff's allegation that the representative "advised him that she was calling from Farmers" and supported that allegation with the complementary allegation, as here, that the representative then went on to pitch Farmer's insurance products. No. 24-CV-0174-CVE-MTS, 2024 WL 4656218, at *4 (N.D. Okla. Nov. 1, 2024). In so doing, the court also distinguished that call from other calls, from different caller IDs, which, unlike here, only had a "seemingly identical voice" and did not even say that they were calling from Farmers. *Id.*

10

And the Defendant's arguments that the Plaintiff has failed to plead vicarious liability fare no better because the Plaintiff has adequately pled directly liability, let alone the reduced standard for pleading vicarious liability. Nor does the Plaintiff failing to plead the specific role of each individual at First American with whom he spoke accurately reflect the pleading standard required of Plaintiff at the pleadings stage. Were that the case, courts would toss each and every case at the pleadings stage where there was a dispute as to whether a tortfeasor was an employee or an independent contractor. But even assuming, *arguendo*, that the individuals with whom Plaintiff spoke were not First American employees and lacked other indicia that would only support a case against them for vicarious (not direct) liability, this is still insufficient for the Defendant to obtain dismissal, as Judge Savage observed in *Havassy v. Keller Williams Realty, Inc.*, No. CV 21-4608, 2024 WL 1640984, at *6–7 (E.D. Pa. Apr. 16, 2024) (cleaned up):

> KWRI denies any direct connection between it and Hewitt and Houston, arguing that they work with an independent market[ing] center. . . . That KWRI employees did not make the phone calls does not mean KWRI had no connection to them. Houston and Hewitt, as prescribed in KWRI's guidelines, used KWRI's name when they called potential customers and identified themselves as associated with "Keller Williams." . . . Using the Keller Williams logo and the Keller Williams domain in their email addresses enhances KWRI's brand and consequently its profits. . . . Hence, we conclude that KWRI's conduct is related to Havassy's claims.

As already counselled by this Court, the Plaintiff has more than adequately pled a claim for direct liability. When, as here, he has done so, the Plaintiff need not plead an alternative case for vicarious liability. Even so, Courts have had no trouble inferring vicarious liability on any one of the three possible theories when the Plaintiff has pled a direct liability theory. *See, e.g.*, *Chinitz v. Intero Real Est. Servs.*, No. 18-CV-05623-BLF, 2021 WL 1375837, at *5 (N.D. Cal. Apr. 12, 2021) ("The Court finds that Defendant is vicariously liable for calls made by its corporate sales associates and agents based on apparent authority."); *McMorrow v. Core Properties, LLC*, No. 4:23-CV-00126-JAR, 2023 WL 8697795, at *13 (E.D. Mo. Dec. 15, 2023)

11

("[T]he Court finds that Plaintiff has established that Core Properties provided apparent authority to 1000 CAD to send the text messages to Plaintiff."); *Hayhurst v. Keller Williams Realty, Inc.*, No. 1:19CV657, 2020 WL 4208046, at *6 (M.D.N.C. July 22, 2020) ("At this stage of the proceedings, Hayhurst has sufficiently alleged an agency relationship between Keller Williams and the individuals who called him.").

Here, the Plaintiff pleads facts which permit the court to plausibly determine that the Defendant was directly responsible for the alleged conduct and that the Defendant acted unlawfully, as explained above. And despite the Defendant taking issue with the fact that the Plaintiff caught them red-handed, they provide no plausible counter explanation for their apparent theory (which is also inappropriate at this stage of the proceedings in any event), that some impostor called the Plaintiff to sell home warranty services for the Defendant's apparent benefit. As yet another sister court observed in *Cunningham v. Watts Guerra*, LLP. No. SA-22-CV-363-OLG (HJB), 2024 U.S. Dist. LEXIS 93370, at *36 (W.D. Tex. May 23, 2024), the "defendants' argument," identical to the one here that more specificity is required at the pleadings stage, was "untenable." It stated, "To require more would effectively immunize savvier TCPA violators from liability—i.e., those with the wherewithal and means to use middlemen—or a series of increasingly removed middlemen—to solicit business through prohibited robocalling operations. *Id.* Or, as Plaintiff put it, "Defendants' argument, if tenable, would reward robocallers for attempting to obfuscate their identity in order to prevent TCPA liability." *Id.* (cleaned up). The Plaintiff has unquestionably pled a direct liability claim.

The Defendant's "we didn't do it" argument is more properly the subject of a jury trial or at the very least a motion for summary judgment. *Cunningham v. Rapid Response Monitoring Servs., Inc.*, 251 F. Supp. 3d 1187, 1199 (M.D. Tenn. 2017) ("Cunningham has investigated the

12

parties extensively, but inevitably some aspects of their relationships will only come to light in discovery."). These details surrounding the calls are more than sufficient to put Defendant on notice of the claim being asserted and that it is alleged to have made telemarketing calls directly to Plaintiff. Tellingly, the Defendant does *not* have any explanation for why the Plaintiff received three calls from First American's direct line after he spoke with various individuals on the spoofed call, who confirmed they were with First American. For all intents and purposes, Defendant attempts a smoke-and-mirrors game of purported deficiencies in the complaint in an ill-contrived effort to escape liability under the TCPA. "[T]he plausibility standard does not require [the] plaintiff to *definitively* connect [the] defendants to the calls received." *Zeitlin v. Palumbo*, 532 F. Supp. 3d 64, 71 (E.D.N.Y. 2021). Nor does it require the plaintiff to disprove the possibility that the robocall was "placed by some independent third party, from which [the defendant] merely purchased the 'sales lead.'" *Morris v. SolarCity Corp.*, No. 15-CV-05107-RS, 2016 WL 1359378, at *2 (N.D. Cal. Apr. 6, 2016). "Perhaps this is an inference that a factfinder might ultimately make, but at this stage" the Court "must draw all inferences in favor of the plaintiff[ ], not the defendant[ ]." *Edrei v. Maguire*, 892 F.3d 525, 539 (2d Cir. 2018).

Defendant cannot defeat that plausible inference using speculation, for there is no inquiry without a starting point, and the starting points must be accepted as known in some sense, even if they are not known in the strictest sense. To attempt to doubt these starting points at the outset would prevent any inquiry from proceeding. Should this Court at all find the Plaintiff's pleading at all deficient, the Court only need give the order granting the Plaintiff leave to amend and he will do so to rectify any perceived deficiency.

B.   *The Plaintiff has plainly alleged four calls he received in violation of the TCPA, which is more than the two required.*

As to its second reason for why it claims this case ought to be dismissed, the Defendant claims that the Plaintiff has failed to allege that he received more than one call in a twelve-month period to sell him a product or service. This argument stretches credulity and borders on the absurd. For starters, the Plaintiff has plainly alleged four calls made to sell him home warranty services in a twelve-month period. (Am. Compl. ¶ 23). The Plaintiff was able to connect those calls to the Defendant because they all occurred within a week of each other, they were all made to sell First American's goods and services by admission, and three calls came from the same caller ID which, when called back, goes to Defendant First American.

Exactly what issues the Defendant takes with the Plaintiff's pleading is unclear. It seems to begrudgingly concede that the first call, which the Plaintiff alleges was made to sell him a specific product, a "home warranty through First American Home Warranty" and spoke to multiple representatives in making that sales pitch, was a solicitation under the TCPA. (Compl. ¶ 26). So too with the three additional calls, which all came from the same place, contained similar content, and attempted to sell the same thing as the first calls. (Compl. ¶ 28). This case is nothing like the Plaintiff's admitted loss, without prejudice, in *Top Healthcare Options*. There, the Plaintiff answered only one of the nine calls at issue, during which the caller attempted to sell him a health insurance plan. *Weingrad v. Top Healthcare Options Ins. Agency Co.*, No. CV 23-5114, 2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024). Relying on *Gillam* and *Gulden*, cited by Defendant, this Court concluded that because Plaintiff only answered one of the calls, and pled no other facts demonstrating that the unanswered calls were telephone solicitations, the Court determined that the Plaintiff did not "presently allege" that he received more than one telephone solicitation in a twelve-month period and granted leave to amend.

14

Not so here, where the Plaintiff answered three of the four calls, including two of the calls from First American's direct number, where the callers pitched and attempted to sell the Plaintiff on First American's home warranty services, just like on the first call. Indeed, this Court in *Top Healthcare* also contrasted the facts of that case with the District of New Jersey's holding in *Atkinson v. Choice Home Warranty*, No. CV 22-04464, 2023 WL 166168, at *5 (D.N.J. Jan. 11, 2023). In *Choice Home Warranty*, the Defendant's law firm, relying on a substantively similar motion to the one it pleads here, made an identical allegation that the plaintiff did not adequately plead that the four calls she received were telephone solicitations. The District of New Jersey there disagreed, holding that the Plaintiff's allegations, almost exactly as here, that the calls were made to "sell Plaintiff a home warranty plan," that the "calls were for telemarketing purposes" and that the "Defendant placed calls . . . on numerous occasions attempting to solicit Plaintiff a home warranty plan," were similarly sufficient. *Id.* The Court concluded that those allegations "create a reasonable inference that more than one of the seven calls explicitly listed were "telephone solicitations" in violation of the statute." *Id.* This Court should reach an identical conclusion as the District of New Jersey in deciding on a nearly identical form motion on nearly identical pled facts.

C.  *The Defendant's unlawful caller ID spoofing demonstrates "knowing" and "willful" violations of the TCPA.*

The TCPA provides for treble damages for any entity violating the TCPA "knowingly" or "willfully." The Defendant claims that the Plaintiff's allegations of such damages are "conclusory." However, such an argument ignores the specificity of the Plaintiff's allegations, including that it knew that it was acting intentionally *by illegally spoofing its caller ID*. (Compl. ¶ 26). One does not spoof a caller ID to a local resident in order to hide their identity, an illegal

15

act which also violates the TCPA, inadvertently or accidentally. The Defendant knew *exactly* what it was doing, illegally, in this respect.

In interpreting the willful or knowing standard, courts require only that a party's actions were intentional, not that it was aware that it was violating the statute. *See, e.g.*, *Charvat v. Allstate Corp.*, 29 F. Supp. 3d 1147, 1151 (N.D. Ill. 2014) ("willful or knowing violation of TCPA requires only that defendant know of the facts constituting the offense"); *Bridgeview Health Care Ctr. Ltd. v. Clark*, 2013 U.S. Dist. LEXIS 37310 (N.D. Ill. Mar. 19, 2013) ("[T]he Court adopts the more common interpretation that 'willfully' or 'knowingly' simply requires that the act be intentional or volitional, as opposed to inadvertent, and not that defendant must have known that the conduct would violate the statute."). The aforementioned allegations plainly demonstrate that the Defendant was taking intentional actions in spoofing caller IDs to hide the fact that it was illegally calling numbers on the Do Not Call Registry in violation of the TCPA.

The Defendant cannot credibly allege that its actions in *illegally spoofing their caller ID* on one of the calls was inadvertent. Rather, this action was explicit and deliberate, and made in an effort to disguise the Defendant's identity and illegal conduct. Such allegations are more than sufficient to put Defendant on notice of the potential for the fact that a fact finder can determine that a violation of the TCPA was done in a "knowing" or "willful" manner.

D.  *Injunctive relief is particularly warranted here, as Plaintiff continues to receive calls and there is real risk of future harm.*

Defendant also moves pursuant to FED. R. CIV. P. 12(b)(1) to dismiss Plaintiff's claims for injunctive relief, arguing Plaintiff lacks Article III standing to obtain injunctive relief. Specifically, Defendant argues Plaintiff has not shown any risk of future injury. Yet Plaintiff's allegations do establish a risk of future injury. The Plaintiff alleged that Defendant continues to make illegal calls. (Compl. ¶ 26, 48). Defendant has not confirmed it is ceasing its conduct of

16

illegally spoofing caller IDs. The 877-349-3654 number is still active and still rings to First American Home Warranty. As such, an injunction is necessary to stop First American's calling conduct. These allegations plausibly establish a risk of future harm. As a telephone user, Plaintiff is at risk of future telemarketing calls from Defendant. Defendant presents no facts or arguments whatsoever rebutting the risk of such calls from Defendant in the future and do not even admit that they are knocking it off. And though the Plaintiff has adequately alleged future harm, he is not required under the TCPA's statutory injunctive relief:

> The Telephone Consumer Protection Act, 47 U.S.C. § 227 (b)(3), creates a private right of action and allows a Court to order injunctive relief, monetary relief, and treble damages. Plaintiff is not seeking a preliminary injunction, which would require a showing of likelihood of success on the merits and irreparable harm. Defendant argues that Plaintiffs allegations do not suffice to establish either prong, and are inadequate to state a claim for treble damages.
>
> In *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004), the Eleventh Circuit differentiated statutory and non-statutory injunctions. It specified that where a statute bans certain conduct or establishes certain rights, a court may grant an injunction to enforce the statute. Where plaintiff sufficiently alleges a claim for a statutory violation, that is all that is required to request injunctive relief in a complaint. To request treble damages, the Plaintiff must allege a willful violation. Here, Defendant argues the Plaintiff does not sufficiently allege the traditional elements for injunctive relief or for an award of treble damages. Because the Plaintiff need not allege the traditional elements for injunctive relief, the Court denies the motion on that issue.

*Gutierrez v. Fla. Advert. & Mktg. Corp.,* 387 F. Supp. 3d 1410, 1411 (S.D. Fla. 2019). The Court in *Abramson v. AP Gas & Elec. (PA), LLC*, Civil Action No. 22-1299, 2023 U.S. Dist. LEXIS 18996, at *14-15 (W.D. Pa. Feb. 6, 2023) denied a similar motion to dismiss:

> Here, along with allegations that AP Gas is aware of the requirements of the TCPA, Abramson alleges the elements of a TCPA claim to satisfy a demand for injunctive relief: (1) ongoing telemarketing by AP Gas using automated calls to send prerecorded messages; (2) Abramson's receipt of at least eleven prerecorded calls from AP Gas between August 9 and 18, 2022, without his consent; and (3) injury in the form of disturbed solitude and annoyance as well as being temporarily deprived of the use of his phone. These allegations adequately place him within the zone of interests protected by the TCPA, and allege a pattern and practice by AP Gas of violating the TCPA. These allegations are accepted as true, and permit an inference of future violations that the

TCPA seeks to enjoin.

This Court should do the same.

## V.   CONCLUSION

This Court must deny Defendant's motion to dismiss in its entirety. Alternatively, to the extent that the Court finds that additional questions remain, it should permit the Plaintiff to amend to correct the deficiencies as necessary.

RESPECTFULLY SUBMITTED AND DATED this January 14, 2025.

>   */s/ Andrew Roman Perrong*
>   Andrew Roman Perrong, Esq.
>   Perrong Law LLC
>   2657 Mount Carmel Avenue
>   Glenside, Pennsylvania 19038
>   Phone: 215-225-5529 (CALL-LAW)
>   Facsimile: 888-329-0305
>   a@perronglaw.com
>
>   *Attorney for Plaintiff and the Proposed Class*

## CERTIFICATE OF SERVICE

I certify that I filed the foregoing via ECF on the below date, which will automatically send a copy to all attorneys of record on the case.

Dated: January 14, 2025.

>   */s/ Andrew Roman Perrong*
>   Andrew Roman Perrong, Esq.